Please be seated. Would the clerk call the next case, please? Thank you. Mr Taylor. Good afternoon. May it please the court, counsel. My name is Luke Taylor and I represent Tyler Clark, the appellate in this case. We believe that the sole issue for the court to consider today is whether or not the court's finding that there had been no substantial change in circumstances within the context of a petition to modify child support was against the manifest weight of the evidence. We believe that it was. We believe the facts and the testimony in this case are fairly straightforward. Just a quick recitation. On May 28, 2009, a judgment of dissolution of marriage was entered, which adopted the party's joint parenting agreement and marital settlement agreement, which called for my client, Mr Clark, to be granted residential custodianship. And there was a joint legal custody situation, but the children would primarily reside with my client. Mrs Clark was awarded by agreement certain visitation, which included for both the party's two minor children to overnight visits each week. She was also awarded what could be characterized as typical holiday or summer vacation visitation. Also as part of that judgment and agreed marital settlement agreement, Mrs Clark was not obligated to pay any child support. The stated rationale for that was that no child support shall be paid by either party because of the amount of time each parent shall have the children and because the party's incomes are comparable. A year or a year and a half after that, Mr Clark filed his pro se petition to modify child support, alleging that there had been a substantial change in circumstances based upon Mrs Clark exercising substantially less visitation with the party's minor son. Counsel, the first finding was based on an agreement by the parties, was it not? That is correct. And then he ended up having his pro se hearing on June 13, 2011, and I believe the record is clear that the evidence at that point was that Mrs Clark had reduced her visitation with the party's minor son in that instead of exercising two overnights during the week, she had reduced that to one overnight during the week and I believe it was an additional evening she would have supper or a meal with the child. Ultimately, the court denied my client's pro se petition, finding that there had not been a substantial showing of a substantial change in circumstances. Approximately a year or so later, I on his behalf filed a petition and then a supplemental petition to modify child support, also based primarily on my client's allegation that Mrs Clark was now exercising even substantially less visitation with the party's minor son. We went to hearing in late, I believe it was late last year. Mrs Clark testified that prior to the entry of the judgment, prior to May 28, 2009, she was exercising significant custodial time with both minor children. She also testified that as of the date the judgment was entered, she was having overnight visits with her son. She further testified for approximately the year prior to our hearing, she had exercised no overnight visits with her son. She testified that she still had contact with him and spent time with him, but she acknowledged that there had been zero overnight visits. Now her income has decreased, right? Yes, yes sir. She had, it had decreased approximately I believe $3,000 between my client's, well between the entry of the judgment in 2009 and between our hearing I think back in November. That was, I believe would be characterized as a voluntary reduction. She had actually obtained, she had an associate's degree in nursing I guess at the time of the divorce. At the time of our last hearing she had obtained her bachelor's degree in nursing, but she had taken a position, the rationale she gave was so she could spend more time with her family, but it paid her about $3,000 less a year. Ultimately the court did find at the conclusion of our hearing that the parties' incomes remained comparable. And then my client's uncontroverted testimony was that, oh and Mrs. Clark did testify that she had continued to exercise her visitation as it had been ordered, as she had done the whole time, relative to the parties' daughter. That hadn't changed at all. The sole change would be relative to the son. My client testified that over approximately the year prior to our hearing that Mrs. Clark exercised visitation with the son once a week for approximately an hour, an hour and a half, sometimes less, and that would be for a suppertime meal. Under the original decree, if they were in school, I mean really she was having two dinners and two breakfasts with these kids a week. And so by the time you go to hearing, she's got two dinners and one breakfast. With the daughter, she would have her full panoply of meals in time. With the son, all she had for the year prior to our hearing was one dinner a week for about an hour, an hour and a half, according to my client's testimony. Was there a reason for that? The rationale given by the appellee was that she had resided, I'm not sure what the reason was for the initial one overnight decrease between the original judgment and my client's pro se petition, but the rationale given for the second one night decrease was that she had resided with her boyfriend, who at least at the time of the hearing was her fiancé, and that the child did not feel comfortable spending overnights with her there. However, I would want to point out that at the time of our hearing, her testimony was that she had moved out of her boyfriend's home, she was residing back in her own home, and for about three weeks prior to our hearing that she still had not exercised any overnight visits with her son. There was also additional testimony regarding some increase in the needs of the children. Some were admittedly extracurriculars, some horse riding lessons, gymnastics, clarinet lessons I believe, but also academic tutoring for the young lady, and the young man was 16 and had started to thrive. And the court ultimately found that based upon the increase in age that there had been, that the children's need had increased. As I mentioned before, the court had also found that the parties' incomes remained comparable. However, the court ultimately came to the conclusion that, and rightly so, that the case is about a change in circumstances. The court noted that the litmus paper, so to speak, is the judgment of dissolution, and I think the gravamen of the decision is the court stated that this has always been, for whatever reason, the framework of a very, very limited amount of time to the mom, with the tradeoff that there be no child support. I can't put it any other way. There's not been a significant change in circumstances. Obviously we had two arguments with that, or two issues with that I should say. One is that that's not the analysis. The fact that the parties had reached some kind of an agreement wherein mother would have limited time with the child, that doesn't impact, that's not material to the issue of whether or not there's been a substantial change in circumstances. Either there has or there hasn't. But I think our main argument is there has been a substantial change. A decrease of 50 percent from what she was entitled to, what she bargained for, what was entered back on May 28, 2009, would be four overnights each week, two with each child. And now that's been reduced to two overnights each week, two with one child, zero with the other, with the nominal hour, hour and a half supper with the one child. When we're looking at child support and we're really looking at the expense of that, what is the increase in the expense or the decrease in the expense of sleeping or not sleeping in her house? I mean, if she's providing him the meal, I can see, I guess, there's the breakfast meal that isn't being provided. But I don't, I guess I don't see that, you know, in terms of half the time, I guess there really wasn't a lot of time to begin with, and they had agreed that these kids would be, you know, residentially they'd be living with their dad, and she, you know, I guess I don't know what the change is relative that it would require the now child support. Certainly. I would say if the court is going to put some weight on the party's agreement and say, and that's what I believe the trial court did, this is what you bargained for, this is what you get. I don't believe that's necessarily appropriate because it's not up, as we know, it's not up to the parents. It's not their child support, it's the child's child support. They can't advocate that responsibility. You know, the court can't give the parents, unfortunately or fortunately, that type of discretion. But to answer the court's question, well, it still comes down to two overnights, even just during the school year would be 104 breakfasts and suppers. I don't know, $5 a meal. But I thought the testimony was that they were eating together at night. It was just that he wasn't spending the night there. The one night a week, so yes. Then he wasn't having any, they were just getting together once a week. Yes, they were only getting, I'm sorry, they were only getting together once a week for about an hour, hour and a half for the one meal. So two things I could point out, she's providing 52 less suppers a year and 104 less breakfasts a year, and then whatever a child asks for and a parent provides during two days a week, which would be about 28% of the week. And the child about the time that this was going on was 12, 13? Let's see, the child at the time of our hearing late last year, the oldest was 16 and the youngest was 10. Which was the boy? The boy was 16. Okay, and the choice in doing away with the overnights was his, correct? He didn't feel comfortable with the boyfriend? That was the testimony, controverted testimony given by Mrs. Clark. I think that's right. And the form that his not feeling comfortable took was a refusal to come or she acquiesced in his not coming? There's nothing in the record to indicate that she attempted to exercise those visitation rights or custodial time rights that she did have and that there was any refusal. I mean, I'm willing to speculate that at his age he may have made it difficult for her, but that's still the time. By the time we were hearing, he had Jacob as the son, and he was 16 for the year prior. I think just turned 16, so for the majority of the year prior to that, he'd been 15. Didn't have his license at that time. And so, frankly, our position is it's a substantial change in circumstances, but the court's ruling may have jumped ahead and addressed whether or not, pursuant to 505, there should or should not be an increase in child support, but the court never got that far. The court clearly cut its analysis off. Hey, there's not been a substantial change in circumstances. And my quick argument is, you know, when would it be? Thank you. I think we'll hear from the appellee arguing that, hey, this really only counts as a one-night reduction because the prior court order was a denial of my client's pro se motion after mom had already reduced one night. Our argument here today is it's a two-night reduction, that the relevant time period that we should compare for a change in circumstances is back to the judgment. So our argument is there's a 50% reduction in overnight visitation, even if this court would adopt the appellee's suggestion that one night, I would argue that that's a 33% reduction in the type of visitation. And it all goes back to that is the basis that the parties reach their agreement. Whether we agree with it or not, that's why there wasn't child support, that she would spend this time. I'd say public policy and everything else I read and feel tells us that's not really a good basis, but that isn't the argument here. The argument is it was adopted by the court, it was accepted, and she didn't abide by it. So whatever nominal amount or significant amount of money that ended up costing my client, saving her a deal's a deal in that respect, and it wasn't lived up to. And they didn't have any agreement about splitting the costs for activities for the kids in the original judgment? Not that I can recall, other than the requirement that each party pay for 50% of any medical that wasn't covered, that wasn't paid for. Are there any further questions? Thank you. Thank you, Mr. Taylor. Mr. Edmonds, good afternoon. Good afternoon. May it please the Court, I am Jay Edmonds from Peoria, and I represent Deanna Clark, the defendant, the respondent. In this matter, I'll start out by apologizing. I don't know if it's me, probably is, or I'm just having trouble hearing with your audio system. I couldn't hear everything that was said, so my fault. I think the air conditioning. That came on, too, and then I gave up at that point. But anyway, I do agree with Mr. Taylor that the only issue that we have is whether or not there was a substantial change in circumstance. That's our fundamental point and, to me, the only issue in the case. And we can read the cases and they talk about, well, you should have an increase in income or increase in the needs of the children. A lot of different factors could go into it. But in this case, remember, we started off with an agreed judgment, an agreed parenting order, entered on May 28 of 2009, that set two conditions for no child support. This case is about child support. It was based on the fact that the visitation they had plus the relative equal nature of the incomes, and this is what these parties agreed to. To me, we have to look at these two conditions to see whether or not there's been a change. That's what I think. The only change in visitation is with one child, Jacob, who is now 17 years of age. I think he was 16 at the time of the hearing. He was spending one night less per week with his mother overnight than he was before. Everything else is the same. And the daughter is exactly the same. So we have one child, one night a week, that's it. And the incomes, Mr. Clark alleged in his pleadings that his income had gone down. On cross-examination, I got him to admit, which is what was true, that his income hadn't changed. So we have no change in Mr. Clark's income. And then the testimony clears the bill that Mrs. Clark's income went down $3,000. So the second condition that we have in the judgment in the joint parenting isn't that. We have a decrease in income and not an increase. My recollection is there was some testimony about the activities that the kids were in, horseback riding and some other things and so on and so forth. There's nothing in the decree or the joint parenting agreement that says, hey, mom, you're supposed to pay this, dad, you're supposed to pay this. Father's the custodial parent. He can make his decision whatever he wants the kids to be involved in.  We, however, decided at hearing to show the court that my gal, Mrs. Clark, was in fact contributing to some of these expenses. There's exhibits in there, two or three months we had at the time, and then I had her talk about, well, this is kind of normal what she's been paying. So she's been on her own voluntarily kind of helping out with some of these activities that the kids wanted to be in anyway. It's not really relevant to, I think, the issues in front of you folks, but she was doing it anyway. So basically the case comes down to do we have a change in those two circumstances? We have one change, one, and that's the son not spending one night overnight with mom per week. That's it. The incomes don't pass the test because hers has gone down and his is the same. I respectfully submit I think they have failed in their burden to show a substantial change in circumstance. I don't think it's there. Judge Mayer, as we all know, is an extremely well-seasoned, experienced trial judge. For whatever reason, she loves being in divorce court, has been there a majority of her career, and I think she called it absolutely correct. Any questions? Pleasure to see you all and appear in front of you. Thank you. Thank you. Mr. Taylor, rebuttal. Thank you very much. I think Mr. Evans put forth one of the big differences that the two of us have. He sees it as a one-night reduction. I'm still going to reiterate, it's a two-night reduction. The relevant time period is back to substantial change in circumstances since the judgment order, since the agreement. And you say that because the first petition for trial support was denied, just leaving the status quo. When you modify, you go to the last order. Since nothing was changed, the first time he sought child support, so you're saying go back to the decree. Correct. That's absolutely correct. The example that I've given was to do it the way Mr. Evans is suggesting would be the example would be someone petitions the court seeking an increase in child support. You get to court. You find out that the obligor has had an 8% increase in child support. Judge makes a finding that that's not a substantial change in circumstances. There's no increase. There's probably nothing wrong with that. Obligee comes back the next year. Now there's another 8% increase. Court could find again, well, that's not a substantial change in circumstances since the last time we were here. You could do that three times, be denied all three times, but, in fact, the third time you come, the obligor has a 24% increase in his child support. That would be a substantial change. Same thing here. Looking at it the other way, what's next? If now she reduces it one overnight with the daughter, well, are they going to be here saying, hey, that's just one overnight. That's not substantial. Six months after that, she reduces one more overnight with the daughter. Now she has no overnights with any of the children, but because of the way it came before the court, it's not a substantial change in circumstances. We believe it is. We're asking the court simply to reverse the trial court relative to the finding that there's been no substantial change in circumstances. Remand the case back to Judge Mayer. I second everything Mr. Edmonds said about Judge Mayer, and I'm confident that she will then analyze the case properly relative to 505 and come up with the appropriate outcome. Thank you very much. Thank you. We thank both of you for your argument this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. And the court will now stand in brief recess for a panel change.